| | |
|---|---|
| SCOTT GOEDDE, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> STUPAR SCHUSTER & BARTELL S.C., and ASSOCIATED BANK N.A., <br><br> Defendants. | Case No.: 19-cv-664 <br><br> **CLASS ACTION COMPLAINT** <br><br><br> **Jury Trial Demanded** |

## INTRODUCTION

1.     This class action seeks redress for collection practices that violate the U.S. Bankruptcy Code, the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2.     The Court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k, and 28 U.S.C. §§ 1331, 1337, and 1367.  Venue in this District is proper in that Defendants directed their collection efforts into the District.

## PARTIES

3.     Plaintiff Scott Goedde is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4.     Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt allegedly incurred for personal, family, or household purposes.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the alleged debt allegedly arose from a consumer transaction that included agreements to defer payment.

6. Defendant Stupar, Schuster & Bartell, S.C. ("Stupar") is a Wisconsin law firm, with its principal place of business located at 633 West Wisconsin Avenue, Suite 1800, Milwaukee, WI 53203.

7. Stupar is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. Stupar is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

9. Stupar is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

10. Defendant Associated Bank, N.A. ("Associated") is a nationally charted bank, with its principal place of business located at 200 North Adams Street, Green Bay, WI 54301.

11. Wis. Stat. § 427.103(3) defines debt collector as: "any person engaging, *directly or indirectly*, in debt collection, and includes any person who sells, or offers to sell, forms represented to be a collection system, device or scheme, intended or calculated to be used to collect claims. The term does not include a printing company engaging in the printing and sale of forms." (emphasis added).

12. Wis. Stat § 427.103(2) states: "Debt collection" means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due a merchant by a customer."

2

13.     On its face, the WCA's regulation of debt collectors applies without distinction to creditors collecting on their own behalf, to creditors who hire other debt collectors to collect on the creditor's behalf, and to third-party debt collectors acting on behalf of creditors. *See* Wis. Stat. § 427.103(3).

14.     The Western District of Wisconsin has noted: "Unlike the FDCPA, the Wisconsin Consumer Act does not provide exceptions to its general definition of a debt collector." *Hartman v. Meridian Fin. Servs.*, 191 F. Supp. 2d 1031, 1048 (W.D. Wis. 2002).

15.     The Wisconsin Department of Financial Institutions has likewise designated merchants and creditors as "Debt Collectors" under the WCA:

> Anyone attempting to collect a debt arising from a consumer credit transaction in Wisconsin, whether a merchant doing its own debt collecting or a third-party debt collector, must follow Wisconsin's debt collection law, Ch. 427, Wis. Stats. This is an important point because many merchants collecting debt owed directly to them mistakenly believe that they are exempt from Wisconsin's debt collection law because they are not included within the definition of "debt collector" under the federal Fair Debt Collection Practices Act.

https://www.wdfi.org/wca/business_guidance/creditors/debt_collection/

16.     Associated, directly or indirectly, is a debt collector under Wis. Stat. § 427.103(3).

17.     Any company meeting the definition of a "debt collector" is vicariously liable for the actions of a second company collecting debts on its behalf. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees who are "debt collectors" are responsible for the actions of those collecting on their behalf); *citing Pollice*, 225 F.3d at 404-05.

## FACTS

18.     On or about April 10, 2019, Stupar mailed a debt collection letter to Plaintiff regarding an alleged debt owed to Associated. A copy of this letter is attached to this Complaint as Exhibit A.

3

19.     Upon information and belief, the alleged debt referenced by Exhibit A was incurred for personal, family, or household purposes.

20.     Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

21.     Upon information and belief, Exhibit A is a form debt collection letter used by Defendants to attempt to collect alleged debts.

22.     Upon information and belief, Exhibit A was the first letter Defendants sent to Plaintiff regarding this alleged debt.

23.     Exhibit A contains the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail alleged debtors along with, or within five days of, the initial communication:

Federal law gives you thirty (30) days after you receive this letter to dispute the validity of the debt or any part of it. If you do not dispute it within that period, the debt will be assumed valid. If you do dispute the validity of the debt, please notify our law firm at the above address and, as required by law, our firm will mail to you verification of the debt. If, within the same period, you request in writing the name and address of your original creditor, if the original creditor is different from the current creditor Associated Bank, N.A. our firm will furnish you with that information.

24.     Exhibit A also states that Stupar was "retained" by Associated "to collect from you the entire balance, which as of April 10, 2019, was $134.79."

25.     Exhibit A also states:

If you wish to resolve this matter, you must, within fifteen (15) days of the date of this letter; either pay Associated Bank, N.A. the entire amount due as stated above or contact the undersigned to work out arrangements for payment. If you do neither of these things, your account will be reviewed further. Payments should be made to our law firm and payable to "Stupar, Schuster & Bartell Trust Account."

26.     Exhibit A further states:

4

**Federal law requires that we advise you this is an attempt to collect a debt and any information obtained will be used for that purpose.**

**However, to the extent your original obligation was discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation.**

27.     The unsophisticated consumer would be confused and mislead by <u>Exhibit A</u>.

28.     The demand for payment in <u>Exhibit A</u> is false, deceptive, misleading, and unfair.

29.     The representation that Plaintiff owes the alleged debt referenced in <u>Exhibit A</u> is false, and Defendants were not entitled to demand payment of Plaintiff's alleged debt at any point.

30.     On September 30, 2016, Plaintiff filed a Voluntary Petition in the Eastern District of Wisconsin pursuant to Chapter 7 of the U.S. Bankruptcy code. *See, In re Goedde*, Case No. 16-29658-beh, Dkt. No. 1 ("Chapter 7 Voluntary Petition"), *filed* Sept. 30, 2016 (Bankr. E.D. Wis.) (hereinafter, "*In re Goedde*, Dkt. No. 1").

31.     Upon information and belief, the alleged debt referenced in <u>Exhibit A</u> was incurred prior to September 30, 2016.

32.     Plaintiff listed Associated as an unsecured creditor on Schedule F of the Voluntary Petition, stating that the claim was for "Account Fees" in a "Total claim" amount of $100.00. *See, In re Goedde*, Dkt. No. 1 at 20.

33.     Plaintiff's Voluntary Petition provided an address for Associated. *See, In re Goedde*, Dkt. No. 1 at 53.

34.     Upon information and belief, Associated received notice of Plaintiff's Bankruptcy filing.

5

35.     On January 9, 2017, an Order Discharging Debtor was entered in Plaintiff's bankruptcy case.  *See, In re Goedde*, No. 16-29658-beh, Dkt. No. 6 ("Order Discharging Debtor"), *filed* Jan. 9, 2017 (Bankr. E.D. Wis.).

36.     The "disclaimer" that <u>Exhibit A</u> was not attempting to collect a debt "to the extent your original obligation was discharged" is confusing and misleading to the unsophisticated consumer.  There were no "compliance" or "informational purposes" for which Defendants would be mailing this letter to Plaintiff.

37.     Further, <u>Exhibit A</u> falsely represents that an attorney had meaningfully reviewed Plaintiff's file, and determined that the debt was ripe for collection.

38.     Had an attorney reviewed Plaintiff's file, that attorney would have concluded that the debt referenced in <u>Exhibit A</u> had been previously discharged in bankruptcy.

39.     <u>Exhibit A</u> is printed on Stupar's law firm letterhead, which identifies Stupar as "Attorneys at Law."

40.     The letterhead also lists the names of several attorneys associated with Stupar, including: George S. Stupar (1940-1975), Michael P. Stupar, Jeffrey S. Schuster, Thomas M. Bartell, Jr., Todd T. Nelson, James J. Wold, Janine Collette.

41.     The first sentence on <u>Exhibit A</u> states: "Our law firm has been retained by Associated Bank, N.A. to collect from you the entire balance, which as of April 10, 2019, was $134.76."

42.     Finally, <u>Exhibit A</u> appears to be hand-signed by James J. Wold, one of the attorneys listed in the letterhead ("Attorney Wold").

43.     On the whole, <u>Exhibit A</u> falsely implies that an attorney was meaningfully involved in the collection of the account and that legal action is imminent.

44.     The unsophisticated consumer, receiving a letter from a law firm with the above language, believes that that law firm has been hired to sue the consumer, and that an attorney is personally and professionally involved in the consumer's file.

45.     The Seventh Circuit has stated: "An unsophisticated consumer, getting a letter from an 'attorney,' knows the price of poker has just gone up. And that clearly is the reason why the dunning campaign escalates from the collection agency, which might not strike fear in the heart of the consumer, to the attorney, who is better positioned to get the debtor's knees knocking." *Avila v. Rubin*, 84 F.3d 222, 229 (7th Cir.1996).

46.     "If a debt collector (attorney or otherwise) wants to take advantage of the special connotation of the word 'attorney' in the minds of delinquent consumer debtors to better effect collection of the debt, the debt collector should at least ensure that an attorney has become professionally involved in the debtor's file." *Id.*; *see also Clomon v. Jackson,* 988 F.2d 1314, 1320-21 (2d Cir. 1993).

47.     The Third Circuit has held that collection letters purporting to be "from an attorney" when there was no actual attorney involvement violated the FDCPA, even though the letters included an attempted disclaimer of attorney involvement. *Lesher v. Law Offices of Mitchell N. Kay, PC*, 650 F.3d 993, 995 (3d Cir. 2011).

48.     Other Circuits have held that "a lawyer acting as a debt collector must notify the consumer, through a clear and prominent disclaimer in the letter, that the lawyer is wearing a 'debt collector' hat and not a 'lawyer' hat when sending out the letter."

49.     <u>Exhibit A</u> does not include any language in the nature of a disclaimer of attorney involvement, let alone a "clear and prominent disclaimer" like the one discussed in *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 361-62 (2d Cir. 2005). On the contrary, the

7

unsophisticated consumer would interpret the letter as threatening to bring a lawsuit if the consumer does not pay or contact Stupar to make payment arrangements within fifteen days. Exhibit A.

50.     Stupar is a high-volume debt collector. According to CCAP, Attorney Wold alone has appeared in over 450 cases since he was first licensed to practice in 2017.

51.     Upon information and belief, at the time Exhibit A was mailed to Plaintiff, Attorney Wold had not assessed the validity of the alleged debts to the standards required of an attorney.

52.     Upon information and belief, at the time Exhibit A was mailed to Plaintiff, no attorney had assessed the validity of the alleged debts to the standards required of an attorney.

53.     Upon information and belief, at the time Exhibit A was mailed to Plaintiff, no attorney at Stupar had reviewed any documentation underlying Plaintiff's alleged debt, including but not limited to any contract, payment history, or any other documents establishing or evidencing the alleged debts.

54.     Upon information and belief, at the time Exhibit A was mailed to Plaintiff, no attorney at Stupar had exercised the professional judgment that Plaintiff was delinquent on his or her debt and a candidate for legal action, nor was any attorney at Stupar meaningfully involved in the decision to send Exhibit A to Plaintiff.

55.     Upon information and belief, no attorney at Stupar personally reviewed the Exhibit A in any meaningful sense, before the letter is mailed.

56.     Upon information and belief, at the time Exhibit A was mailed to Plaintiff, no attorney at Stupar had reviewed anything relating to Plaintiff's account.  Instead, a computer or a non-attorney assistant at Stupar or a third party mailing company generated and mailed Exhibit A as part of a batch of identical, except for personal information, form debt collection letters.

8

57.     Upon information and belief, from the time that consumer debts are placed with Stupar for collection until the time that a legal complaint is drafted, the only employees of Stupar who are directly involved in the collection process of consumer debts are non-attorneys.

58.     Upon information and belief, a significant portion of Stupar's debt collection activities consists of computer-automated processes, including the sending of computer-generated form letters like Exhibit A.

59.     Moreover, Stupar is frequently engaged to send collection letters to consumers with no intent that Stupar will ever file a lawsuit to collect the debt.

60.     Upon information and belief, Stupar had no intent to ever sue Plaintiff to collect the debt identified in Exhibit A, which was only purported to be $134.79.

61.     A CCAP search of judgments that Associated has obtained against consumers indicates that Associated only files lawsuits for amounts significantly larger than $134.79. Plaintiff's counsel was unable to find *any* Associated lawsuits brought for under $2,500, and most significantly exceeded that amount.

62.     Upon information and belief, Associated had no intent to allow Stupar to sue Plaintiff to collect the debt identified in Exhibit A. Associated hired Stupar to send collection letters, not to sue.

63.     Furthermore, although $134.79 is stated to be the "entire balance … as of April 10, 2019," Exhibit A also states: "[b]ecause of interest, late charges, and other charges that may vary from day to day, the amount due on the date you pay may be greater. Hence if you pay the amount stated above, an adjustment may be necessary after our firm receives your check, in which event our firm will inform…. For further information write the undersigned or call…."

64.     Upon information and belief, the representation that "[b]ecause of interest, late charges, and other charges that may vary from day to day, the amount due on the date you pay may be greater…" is false, deceptive, and misleading.

65.     Upon information and belief, even if Plaintiff's alleged debt had not been discharged in bankruptcy, Stupar does not add any "interest, late charges, and other charges that may vary from day to day" to accounts such as Plaintiff's in the ordinary course of business.

66.     Upon information and belief, the Associated does not add any "interest, late charges, and other charges that may vary from day to day" to accounts such as Plaintiff's in the ordinary course of business.

67.     Upon information and belief, the Associated does not direct Stupar to add any "interest, late charges, and other charges that may vary from day to day" to accounts such as Plaintiff's in the ordinary course of business.

68.     Upon information and belief, Stupar and Associated lacked the legal authority to add any "interest and other charges that may vary from day to day" to Plaintiff's account.

69.     The statement in Exhibit A, that "because of interest, late charges, and other charges that may vary from day to day, the amount owed on the day you pay may be greater," is a materially false, deceptive, and misleading representation that the creditor, or the debt collector would, attempt to collect these charges. *Boucher v. Fin. Sys. of Green Bay*, No. 17-2308, 2018 U.S. App. LEXIS 1094 *8-9 (7th Cir. Jan. 17, 2018).

70.     Finally, Exhibit A additionally states:

If you wish to resolve this matter, you must, within fifteen (15) days of the date of this letter, either pay Associated Bank, N.A. the entire amount due as stated above or contact the undersigned to work out arrangements for payment. If you do neither of these things, your account will be reviewed further.

10

71.     Exhibit A fails to explain how its demand for payment "fits together" with the 30-day validation period.  *See, e.g.*, *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997) ("In the typical case, the letter both demands payment within thirty days and explains the consumer's right to demand verification within thirty days.  These rights are not inconsistent, but by failing to explain how they fit together the letter confuses.").

72.     By demanding payment within fifteen days of the date of the letter without explaining how such demand fits together with the consumer's right to dispute the debt, Exhibit A overshadows the validation notice and includes representations which are false, deceptive, and misleading as to Plaintiff's right to dispute and/or request verification of his alleged debt.

73.     Plaintiff was misled and confused by Exhibit A.

74.     The unsophisticated consumer would be misled and confused by Exhibit A.

### *The FDCPA*

75.     The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized.  *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("Spuhler I") ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA

11

sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11

12

(11th Cir. July 6, 2016) (same); *see alsoMogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)).For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

76. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

77. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

78. 15 U.S.C. § 1692e(2)(A) specifically prohibits "the false representation of the character, amount, or legal status of any debt."

79. 15 U.S.C. § 1692e(3) specifically prohibits: "The false representation or implication that any individual is an attorney or that any communication is from an attorney."

80. 15 U.S.C. § 1692e(5) specifically prohibits "the threat to take any action that cannot legally be taken or that is not intended to be taken."

81. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

13

82.     15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

83.     15 U.S.C. § 1692f(1) specifically prohibits the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

84.     15 U.S.C. § 1692g states:

(a) Notice of debt; contents

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1) the amount of the debt;
>
> . . .
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector;

(b) Disputed debts

. . .

Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt….

14

### The WCA

85.     The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

86.     The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

87.     To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

88.     "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

89.     To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

90.     The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats.

§§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

91.     Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

92.     Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

93.     Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

94.     Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer . . . ."

95.     Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

96.     Wis. Stat. § 427.104(1)(k) specifically prohibits a debt collector from using "a communication which simulates legal or judicial process or which gives the appearance of being authorized, issued or approved by a government, governmental agency or attorney−at−law when it is not.

97.     Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I – FDCPA

98.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

99.     Count I is brought against Defendant Stupar.

100.    By demanding payment of an alleged debt which was discharged in bankruptcy, Exhibit A demands an amount not permitted by law; is false, misleading, and deceptive as to the character and legal status of such debt, and is unfair and unconscionable

101.    Defendant thereby violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), and 15 1692f, 1692f(1).

## COUNT II – WCA

102.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

103.    Count II is brought against both Defendants Stupar and Associated.

104.    By demanding payment of an alleged debt which was discharged in bankruptcy, Exhibit A demands an amount not permitted by law and may reasonably be expected to threaten and harass Plaintiff.

105.    Even discounting the bankruptcy, Associated had no actual intent to allow Stupar to sue Plaintiff to collect the debt identified in Exhibit A. The unsophisticated consumer would not know this.

106.     Defendants thereby violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## **COUNT III – FDCPA**

107.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

108.     Count III is brought against Defendant Stupar.

109.     Exhibit A creates the false impression that an attorney at Stupar had personally reviewed the circumstances of Plaintiff's alleged debt and Exhibit A itself, and "reached a considered, professional judgment that the debtor is delinquent and is a candidate for legal action," at the time that the letters were mailed to Plaintiff.

110.     Before mailing Exhibit A to Plaintiff, no attorney at Stupar had any meaningful involvement with Plaintiff's alleged debt or the letters. *Avila*, 84 F.3d at 229; *Nielsen v. Dickerson*, 307 F.3d 623, 635 (7th Cir. 2002).

111.     Defendant thereby violated 15 U.S.C. §§ 1692e, 1692e(3), 1692e(10), and 1692f.

## **COUNT IV – WCA**

112.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

113.     Count IV is brought against both Defendants Stupar and Associated.

114.     Exhibit A creates the false impression that an attorney at Stupar had personally reviewed the circumstances of Plaintiff's alleged debt and Exhibit A itself, and "reached a considered, professional judgment that the debtor is delinquent and is a candidate for legal action," at the time that the letters were mailed to Plaintiff.

115.     Before mailing Exhibit A to Plaintiff, no attorney at Stupar had any meaningful involvement with Plaintiff's alleged debt or the letters. *Avila*, 84 F.3d at 229; *Nielsen v. Dickerson*, 307 F.3d 623, 635 (7th Cir. 2002).

116.     Defendants thereby violated Wis. Stat. § 427.104(1)(k).

## COUNT V – FDCPA

117.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

118.     Count V is brought against Defendant Stupar.

119.     By stating: "Because of interest, late charges, and other charges that may vary day to day, the amount due on the day you pay may be greater," Exhibit A falsely threatens to impose such charges and is false, deceptive, and misleading as to the character, amount and legal status of Plaintiff's alleged debt.

120.     Defendant thereby violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), 1692e(10), and 1692g(a)(1).

## COUNT VI - WCA

121.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

122.     Count VI is brought against both Defendants Stupar and Associated.

123.     By stating: "Because of interest, late charges, and other charges that may vary day to day, the amount due on the day you pay may be greater," Exhibit A falsely threatens to impose such charges and is false, deceptive, and misleading as to the character, amount and legal status of Plaintiff's alleged debt.

124.    Defendants thereby violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## **COUNT VII - FDCPA**

125.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

126.    Count VII is brought against Defendant Stupar.

127.    By demanding payment within fifteen days of the date of the letter without explaining how such demand fits together with the consumer's right to dispute the debt, Exhibit A overshadows the validation notice and includes representations which are false, deceptive, and misleading as to Plaintiff's right to dispute and/or request verification of his alleged debt.

128.    Defendant thereby violated 15 U.S.C. §§ 1692e, 1692e(10), and 1692g(b).

## **COUNT VIII – VIOLATION OF BANKRUPTCY DISCHARGE**

129.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

130.    Count VIII is brought against both Defendants.

131.    By demanding payment of an alleged debt which was discharged in bankruptcy, Exhibit A demands an amount not permitted by law; is false, misleading, and deceptive as to the character and legal status of such debt, and is unfair and unconscionable.

132.    Rather than not attempt to collect debts that were effectively discharged, Defendants included a "bankruptcy disclaimer," which serves only to exacerbate confusion.

20

133.    By including the disclaimer rather than simply not attempting to collect debts that

were effectively discharged, Defendants willfully violated the discharge injunction.

134.    Defendant violated 11 U.S.C. § 524(a).

## CLASS ALLEGATIONS

135.    Plaintiff brings this action on behalf of four Classes:

136.    Class I ("Nationwide Discharged Debts Class") consists of:

(a) all natural persons in the United States of America (b) who were sent a collection letter by Stupar, (c) seeking to collect a debt owed to Associated, (d) incurred for personal, family, or household purposes, (e) that had been discharged in bankruptcy, (f) where the letter was mailed between May 6, 2014 and May 6, 2019, inclusive, (g) and was not returned by the postal service.

137.    Class II ("Wisconsin Discharged Debts Class") consists of:

(a) all natural persons in the State of Wisconsin (b) who were sent a collection letter by Stupar, (c) seeking to collect a debt owed to Associated, (d) incurred for personal, family, or household purposes, (e) that had been discharged in bankruptcy, (f) where the letter was mailed between May 6, 2014 and May 6, 2019, inclusive, (g) and was not returned by the postal service.

138.    Class III ("Attorney Involvement Class") consists of:

(a) all natural persons in the State of Wisconsin (b) who were sent a collection letter by Stupar, (c) seeking to collect a debt owed to Associated, (d) prior to attorney review of the person's file, (e) where the debt was incurred for personal, family, or household purposes, (f) and the letter was mailed between May 6, 2018 and May 6, 2019, inclusive, (g) and was not returned by the postal service.

139.    Class IV ("False Threat to Sue Class") consists of:

(a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit A to the complaint in this action, (c) seeking to collect a debt allegedly owed to Associated Bank, (d) incurred for personal, family, or household purposes, (e) in an amount less than $2,000.00, (f) between May 6, 2018 and May 6, 2019, inclusive, (g) that was not returned by the postal service. Excluded from the class are any persons who Associated sued to collect the debt.

140.    Class V ("False Threat of Charges Class") consists of:

(a) all natural persons in the State of Wisconsin (b) who were sent a collection letter by Stupar, (c) seeking to collect a debt owed to Associated, (d) stating that "because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater," (e) where the debt was the result of account fees, (f) incurred for personal, family, or household purposes, (g) and the letter was mailed between May 6, 2018 and May 6, 2019, inclusive, (h) and was not returned by the postal service.

141.    Each Class is so numerous that joinder is impracticable.

142.    Upon information and belief, there are more than 50 members of each Class.

143.    There are questions of law and fact common to the members of each Class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Defendants complied with the U.S. Bankruptcy Code, the FDCPA, and/or the WCA.

144.    Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

145.    Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

146.    A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

147.    Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a)     actual damages;

(b)     statutory damages;

22

(c)     declaratory relief;

(d)     injunctive relief;

(e)     punitive damages;

(f)     attorneys' fees, litigation expenses and costs of suit; and

(g)     such other or further relief as the Court deems proper.

Dated:  May 6, 2019

**ADEMI & O'REILLY, LLP**

By:     /s/ John D. Blythin
         John D. Blythin (SBN 1046105)
         Mark A. Eldridge (SBN 1089944)
         Jesse Fruchter (SBN 1097673)
         Ben J. Slatky (SBN 1106892)
         3620 East Layton Avenue
         Cudahy, WI 53110
         (414) 482-8000
         (414) 482-8001 (fax)
         jblythin@ademilaw.com
         meldridge@ademilaw.com
         jfruchter@ademilaw.com
         bslatky@ademilaw.com

23